# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7844 | **DATE** | 12/1/2003 |
| **CASE TITLE** | Kocovsky vs. Lucent Technologies, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] This matter is before the Court on Defendant Lucent Technologies, Inc's motions for partial summary judgment as to Count I and II of Plaintiff Joseph J. Kocovsky's amended complaint. Count I seeks relief for employment discrimination pursuant to 29 U.S.C. § 623(a), as well as a retaliation claim. Count II seeks relief for violations of the Employment Retirement Income Security Act ("ERISA") pursuant to 29 U.S.C. §§ 200, *et. seq.* For the reasons stated on the attached memorandum opinion, the Court hereby grants both motions for partial summary judgment. All pending dates and motions are hereby stricken as moot. Enter Memorandum Opinion. Terminating case.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | **Document Number** |
| | No notices required. | | |
| | Notices mailed by judge's staff. | DEC 2 2003 | |
| | Notified counsel by telephone. | date docketed | 73 |
| ✓ | Docketing to mail notices. | *eu* | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| MW | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 03 DEC -2 AM 3: 16 FILED-ED 10 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



DEC 2 - 2003

| | | |
|---|---|---|
| JOSEPH KOCOVSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 7844 |
| | ) | |
| LUCENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

DEC 2 2003

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the Court on Defendant Lucent Technologies, Inc.

("Lucent") motions for summary judgment as to Count I and II of Plaintiff Joseph J.

Kocovsky's ("Kocovsky") Amended Complaint. Count I seeks relief for

employment discrimination pursuant to 29 U.S.C. § 623(a), as well as a retaliation

claim. Count II seeks relief for violations of the Employment Retirement Income

Security Act ("ERISA") pursuant to 29 U.S.C. §§ 200, *et. seq.* For the reasons

stated below we grant both motions for summary judgment.

## BACKGROUND

Kocovsky was employed by Lucent and its predecessors[1] from approximately

---

[1] Kocovsky was formerly employed by AT&T Corp. ("AT&T"). In September, 1995 AT&T announced it
would be establishing three separate companies, two of which would be spun off from AT&T. One of those
companies was Lucent. Kocovsky was in an organization at AT&T that became part of Lucent. Kocovsky was a
Lucent employee until the termination of his employment on May 8, 1996. Pl.'s Resp. to Def.'s Rule 56.1(a)(3)

September, 1963 through May, 1996. Kocovsky was initially hired as a mail clerk, became a draftsman, then a designer, and for approximately the last two to three years of his employment at Lucent worked in the printed wiring board design department.

In January of 1996, Kocovsky's immediate supervisor Mr. Rick L. Shaw ("Shaw"), completed Kocovsky's evaluation for the year of 1995. The Lucent evaluation was referred to as a Performance Appraisal Record ("PAR"). The PAR indicated Kocovsky's strengths and the areas which were in need of improvement. Shaw reviewed the PAR with Kocovsky and signed and dated the document. Kocovsky chose not to sign the PAR. After completing the PAR evaluation, Shaw determined that a formal Performance Improvement Plan ("PIP") should be implemented for Kocovsky pursuant to AT&T Personnel Guide, section 12-1, for "Managing Performance Problems". The PIP identified what Shaw felt were Kocovsky's performance problems. The PIP also contained a development plan with specific objectives which Kocovsky would be required to successfully complete over the course of the PIP. The PIP warned Kocovsky that a failure to complete the plan successfully would result in his termination as an employee of AT&T.

After Kocovsky was placed on the PIP, David M. Luker ("Luker") became Kocovsky's supervisor. Kocovsky remained on the PIP and worked as a printed

---

Statement of Material Facts as to Count II ¶'s 2-5. The court makes reference to Lucent as the defendant throughout the opinion, but also frequently mentions AT&T and its policies that were implemented at the time of Kocovsky's employment.

wiring board designer on a project called the UN192d AM2. For approximately the next two ands a half months, Luker met with Kocovsky for interim reviews of his progress of the PIP. On May 8, 1996, Luker completed Kocovsky's final performance review. In the review, Luker found that Kocovsky failed to successfully correct three out of four of his performance problems and that his performance was still considered unsatisfactory. Luker then issued a letter of termination that terminated Kocovsky based upon his poor PAR for 1995 and his failure to successfully meet the objectives set forth in his PIP.

On May 9, 1996, Kocovsky filed an amended[2] charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"). The charge alleged age discrimination and retaliation between September 22, 1994 and May 8, 1996. On July 31, 2001, the EEOC issued Kocovsky a Notice of Right to Sue letter under the Age Discrimination in Employment Act ("ADEA").

On October 11, 2001, Kocovsky filed a complaint against Lucent in the Northern District of Illinois. Kocovsky amended this complaint on April 21, 2003. Kocovsky's First Amended Complaint alleges employment discrimination under the ADEA, 29 U.S.C. § § 623 *et seq.*, a retaliation claim, and violations of the

---

[2] Kocovsky had previously filed five separate charges of discrimination against AT&T Bell Laboratories between the dates of September 27, 1994 and March 20, 1996. Pl.'s Am. Compl. Ex. 2-6. The May 9, 1996 charge of discrimination was an amended charge based upon the previous five charges filed. Pl.'s Am. Compl. Ex. 2-7.

Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 200, *et. seq.*

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v.*

4

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I.    Employment Discrimination

The Age Discrimination Employment Act ("ADEA") prohibits employers from terminating employees because of their age. 29 U.S.C. § 623(a). Kocovsky has not presented any direct evidence of discrimination by Lucent here on this issue, therefore in reviewing his ADEA claims we will proceed under the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Peele v. Country Mutual Insurance*, 288 F.3d 319, 327 (7th Cir. 2002)(explaining that in the absence of direct evidence in an age discrimination suit the *McDonnell Douglas* burden shifting analysis will be applied); *see also Crady v. Liberty Nat. Bank and Trust Co. of Indiana*, 993 F.2d 132, 134 (7th Cir. 1993).

*- McDonnell Douglas Burden Shifting Analysis*

Under *McDonnell Douglas*, a plaintiff will establish a prima facie case of age discrimination where she demonstrates, by a preponderance of the evidence, that: (1) she is a member of a protected class; (2) at the time of her termination, she was meeting her employer's legitimate employment expectations; (3) in spite of meeting

the legitimate employment expectations of her employer, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated male or younger employees. *Peele,* 288 F.3d at 326; *see also e.g.; Bennington v. Caterpillar, Inc.,* 275 F.3d 654, 659 (7th Cir.2001). If the plaintiff is able to establish a *prima facie* case of sex or age discrimination, the employer must then produce a legitimate, nondiscriminatory reason for the employee's termination. *Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1009 (7th Cir.2000). If the employer offers a legitimate, nondiscriminatory explanation for the termination, the plaintiff must then rebut that explanation by presenting evidence sufficient to enable a trier of fact to find that the employer's proffered explanation is pretextual. *Id.* Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 685 (7th Cir.2000). A plaintiff does not reach the pretext stage, however, unless she first establishes a *prima facie* case of discrimination. *Peele,* 288 F.3d at 326; *Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1179 (7th Cir.1997).

## A. <u>Prima Facie Case</u>

### (1) *Whether or not Kocovsky is a member of a protected class.*

At the time of his termination, Kocovsky was an individual over 40 years old, and therefore qualifies as a member of a protected class under the ADEA. 29 U.S.C. § § 623 *et seq.*

### (2) *Whether or not at the time of his termination on May 8, 1996, Kocovsky*

6

*was meeting Lucent's legitimate employment expectations.*

Lucent contends that Kocovsky was not performing satisfactorily at the time of his termination. Kocovsky states that he was satisfactorily performing his job.

After Kocovsky received an unsatisfactory Performance Appraisal Record evaluation ("PAR") for the 1995 year, Shaw determined that a formal Performance Improvement Plan ("PIP") should be implemented for Kocovsky pursuant to AT&T Personnel Guide, section 12-1, for "Managing Performance Problems". Def.'s App. Ex. D. In January of 1996, Kocovsky was informed that he would be placed on a Lucent PIP. A PIP's effect is to act as a performance measure. Def.'s App. Ex. B. The PIP document described key performance and behavioral problems to be overcome by Kocovsky, gave the parameters of the PIP probationary assignment, listed the key objectives, and provided the mechanisms by which success or failure would be determined at the conclusion of the final performance review. Def.'s App. Ex. D. The PIP specified four areas of Kocovsky's performance requiring corrective action and listed the means by which Lucent expected Kocovsky to overcome these areas:

| Performance Problem | (1) A high level of PWP Interconnection QA errors, relative to his design peers, during the PWP Interconnection Design Process. |
|---|---|
| | *- Mr. Kocovsky's performance objective here is to reduce his error rate to less that 1.4 design errors per QA inspection submission.* |
| | *- Mr. Kocovsky's performance objective here shall be to realize a performance result reflecting an average of 3 QA inspection submittals per design code or less.* |
| | *- Mr. Kocovsky's performance objective here is to have zero QA inspection submittals required to fix or correct design problems designed during a previous QA inspection.* |
| Performance Problem | (2) Often refuses to acknowledge and act upon suggestions or directives of his immediate manager. |
| | *- Mr. Kocovsky's performance objective here will be establish a PAR for 1996 by the* |

*date required of the Associates in Department NQ9230000, as defined by Mr. J. M. Sebeson, Director. During the performance objective setting process for 1996, should Mr. Kocovsky receive feedback from his manager(s), giving him clear suggestions, guidelines, or directives, that are intended to modify his performance objectives such that they possess SMART attributes, he will follow those directives accordingly.*

*- This performance objective is not limited to the objective setting process, but also extends to his day-to-day operations and activities in the work place, meaning that if a member of the NQ9230000 management team offers constructive feedback or directs some reasonable action as it pertains to his job or assignment, he should comply and not openly defy such requests as he has in the past.*

**Performance Problem**    **(3) Rarely admits a lack of skill or knowledge and does not acknowledge his own errors or mistakes.**

*- Mr. Kocovsky's performance objective here is to openly acknowledge his errors or mistakes. The focus here his to understand the error and learn how to avoid repeating it, not to dwell on who committed the error. The latter behavior only expends valuable time and resources which cannot be recovered, including the resources of Mr. Kocovsky, his peers and his managers. Peer feedback and/or input will be used here in assessing the performance results for this objective.*

**Performance Problem**    **(4) Filters or even changes information to make it consistent with his views or assumptions.**

*- Mr. Kocovsky's performance objective here will be to receive and accept information or feedback accurately and in a positive manner. The assessment of this objective may include feedback or input from peers or Mr. Kocovsky's management.*

Interim performance reviews of progress and results were to be held bi-weekly with Kocovsky and Luker and/or Mr. J.M. Sebeson[3]. The PIP document warned Kocovsky that a failure to complete the plan successfully would result in his termination as an employee of AT&T. Def.'s App. Ex. D. The PIP was reviewed with Kocovsky by Shaw. Kocovsky then signed the document.[4]

Over the next two and a half months Kocovsky remained on the PIP and worked as a printed wiring board designer on a project called the UN192d AM2. Def.'s App. Ex. J. Kocovsky documented his personal progress notes of the project,

---

[3]John Sebeson was a group leader and a director of the performance reviews at the time Kocovsky was terminated. Def. App. Ex. D.

[4] Kocovsky signed the PIP document under a note that read "Signed under duress January 24, 1996".

and also obtained the progress notes of a co-worker, Cassandra McKinney, who worked with him on the project. Pl.'s Statement of Material Facts ¶ 7; Pl.'s App. Ex. B, C. Luker met with Kocovsky for interim performance reviews of progress and results while on the PIP. Luker recorded these reviews in well documented and detailed memorandums . Def.'s App. Ex. F,G,H,I. On April 2, 1996, Kocovsky completed his work as a printed wiring board designer on the UN192d AM2 project. Def.'s App. Ex. J.

Kocovsky argues that because he satisfactorily completed the UN192d AM2 project contained in his PIP, he should have been considered performing his job satisfactorily. Kocovsky supports this argument with a co-workers project notes of the PIP, his own documented project performance notes of the PIP, and a series of emails he saved which record various correspondences between Kocovsky and his co-workers and supervisor. Pl.'s App. A, B, C. All of these documents support the conclusion that Kocovsky met the objectives of his first performance problem objective and part of his second performance objective. Furthermore, in Luker's Final Performance Review of Kocovsky, Luker states that Kocovsky met the criteria set forth in Performance Problem 1 and partially met the criteria set forth in Performance Problem 2. Def.'s App. Ex. J.

However, Kocovsky fails to acknowledge (or address) the remaining findings of Luker's Final Performance Review. Luker noted that during the PIP period, Kocovsky's behavior was marked by an eagerness to contend, resistance to the

9

process, and to patterns generally inconsistent with the identified Performance Problems 2,3, and 4. Def.'s App. Ex. J. Luker found that Kocovsky failed to meet the criteria set forth in Performance Problems 3 and 4, and partially failed in performance problem 2. Luker then terminated Kocovsky based upon his poor PAR for 1995 and his failure to successfully complete his PIP in 1996. Def.'s App. Ex. E.

A plaintiff must prove that he was meeting his employer's bona fide expectations, before he can force the employer to produce the reasons for why he was fired or otherwise subjected to adverse action. *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1180 (7th Cir.1997). When a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not employee's past performance, but "whether the employee was performing well at the time of [her] termination". *Peele v. Country Mut Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002)(quoting *Karazanos v. Navistar Intern. Transp. Corp.*, 948 F.2d 332, 336 (7th Cir.1991). The evidence submitted by Kocovsky has failed to prove that he met Lucent's legitimate employment expectations at the time of his termination.[5] Kocovsky's reliance on the argument that because he completed the UN192d AM2 project, he then successfully completed his PIP is also without merit. The PIP listed four separate performance problems

---

[5]Kocovsky argues that certain co-workers will testify that he successfully completed his PIP. This argument is without merit. General statements of co-workers, indicating that plaintiff's job performance was satisfactory, are insufficient to create a material issue of fact as to whether a plaintiff was meeting her employer's legitimate employment expectations at the time she was terminated. *Peele*, 288 F.3d 319 at 329(citing *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994). Furthermore, the two affidavits Kocovsky has submitted by two of his former co-workers that are filed with the Clerk of the Court are not signed by either affiant. Pl.'s App. Ex. F, G.

that required corrective action. Kocovsky has admitted that he was aware of this fact. Pl.'s Answer to Def.'s Rule 56.1(a)(3) Statement of Material Facts ¶ 23; Def.'s App. Ex. F,G,H,I). Kocovsky's poor 1995 PAR, the testimony of Kocovsky's former supervisors, Kocovsky's admissions to the Defendant's Rule 56.1(a)(3) Statement of Facts, and his failure to successfully complete the entire PIP are sufficient evidence that Kocovsky did not meet Lucent's legitimate employment expectations at the time of his termination. Def.'s App. Ex. B, C, J; Pl.'s Answer to Def. Rule 56.1(a)(3) Statement of Material Facts.

**(3) *Whether Kocovsky suffered an adverse employment action, even if he could have proven he met Lucent's legitimate employment expectations.***

As we have stated above, Kocovsky did not meet the legitimate employment expectations of Lucent. Notwithstanding, for purposes of analyzing *McDonnell Douglas*, we briefly review the following allegations Kocovsky believes were discriminatory in nature and thus claims that they constituted a materially adverse employment action: (1) denial of training on Mentor Graphics Design System; (2) involuntary job reassignment; (3) manner in which performance reviews were conducted; (4) denial of raise; (5) refusal to relay information necessary for him to complete his job; (6) the separation of his employment; (7) denial of participation in a company "buddy system"; (8) general harassment; and (9) discrediting his ability to perform his job. Pl.'s Answer to Def.'s Rule 56.1(a)(3) Statement of Material Facts ¶ 34.

11

As the Seventh Circuit has stated, "a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat. Bank and Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993). In addition, a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. *Id.*

Kocovsky's argument that he was denied training on the Mentor Graphics Design Systems fails because he admits he was aware that every employee would not receive training and also admits that he did receive in-house Mentor Graphics training twice in 1994. Pl.'s Answer to Def. Rule 56.1(a)(3) Statement of Material Facts ¶'s 52, 53, 54. Kocovsky's argument that he received an involuntary job reassignment fails because, as Kocovsky admits, he was not reassigned. Pl.'s Answer to Def. Rule 56.1(a)(3) Statement of Material Facts ¶ 64.

Kocovsky also challenges the manner in which performance reviews were conducted. However, adverse performance ratings alone usually do not constitute an adverse action. *Smart v. Ball State University,* 89 F.3d 437, 442 (7th Cir 1996). This court finds that the performance reviews used in the PAR evaluation and in the PIP are neither adverse nor subjective in nature. Def.'s App. Ex. C, D, F, G, H, I, J. Kocovsky's next alleges that he was discriminatorily denied a pay raise. Def. App.

Ex. A p. 206, 209. He contends his denial of a pay raise was because of his PAR. As the Court has stated above, the performance reviews used in the PAR were neither adverse nor subjective in nature. Kocovsky's contention here is without merit. Kocovsky also contends that had he not been fired he would have received a pay raise. The Court finds that this contention is totally without merit. Kocovsky argues that Lucent refused to relay information necessary for him to complete his job, that he was generally harassed, and that he was discredited for his ability to perform his job, do not constitute adverse employment actions. *See Coco v. Elmood Care, Inc.* 128 F.3d 1177, 1179, (7th Cir. 1997)(*stating "...it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers..."*). Kocovsky fails to support all of the above mentioned allegations with sufficient evidence to prove they constituted an adverse employment action, such as a *decrease in wage or salary, a less distinguished title, a material loss of benefits, any significantly diminished material responsibilities, or other indices that might be unique to a particular situation. Crady,* 993 F.2d at 136(*emphasis added*); Pl.'s Mem. in Opp'n to Summ. J.; Pl.'s Statement of Material Facts.

Kocovsky alleges that the denial by his employer for him to participate in the "buddy system"[6] constituted an adverse employment action. Lucent contends that at times Kocovsky's work had to be reviewed outside the "buddy system" due to concerns for interpersonal relationships and Kocovsky's behavior. Def.'s Ex. B p.

---

[6]The "Buddy System" allowed designers to review other designers work before it was reviewed by QA personnel. Pl.'s App. Ex. D. p. 22.

161-162. This court finds that the manner in which an employer reviews the work product of an employee is not in of itself an adverse employment action. Furthermore, there is no indication that the "buddy system" was considered to be an essential requirement for Kocovsky's employment. Kocovsky's other contention that his termination constitutes an adverse employment action would have merit had Kocovsky been meeting Lucent's legitimate employment expectations, which he was not.

**(4)** *Whether or not Kocovsky was treated less favorably than similarly situated male or younger employees.*

Kocovsky states that similarly situated employees outside the protected class were changing their status from temporary contract employees to full-time employees while Kocovsky was being fired. Pl.'s Mem. in Opp'n to Summ. J.; Pl.'s Statement of Material Facts ¶'s 19, 20. However, Kocovsky has failed to produce sufficient evidence to raise an inference that Lucent applied its legitimate employment actions in a disparate manner(i.e., applied expectations to similarly situated male and younger employees in a more favorable manner). *See Peele*, 288 F.3rd at 329(explaining how a plaintiff can establish a *prima facie* case and proceed to the pretext inquiry).

"A plaintiff may demonstrate that another employee is 'similarly situated' to her by 'show[ing] that there is someone who is directly comparable to her in all material respects'." *See Peele*, 288 F.3rd at 320(quoting *Patterson v. Avery*

*Dimension Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). To determine whether employees are similarly situated, "a court must look at all relevant factors, the number of which depends on the context of the case." *See Peele*, 288 F.3rd at 320(quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617(7th Cir.2000)). Furthermore, "in disciplinary cases--in which a plaintiff claims that [she] was disciplined by [her] employer more harshly than a similarly situated employee based on some prohibited reason--*a plaintiff must show that [she] is similarly situated with respect to performance, qualifications, and conduct*." *See Peele*, 288 F.3rd at 320(emphasis added)(quoting *Radue*, 219 F.3d 617). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, *and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them*." *See Peele*, 288 F.3rd at 320(emphasis added)(quoting *Radue*, 219 F.3d at 617-618).

Kocovsky, in his sixth amended EEOC charge points to three individuals[7] who he alleges are similarly situated to himself. Pl.'s Amend Compl. Ex. 7. First, he points to a thirty-six year old female, who was a Senior Technical Associate. This comparison fails because Kocovsky was not a Senior Technical Associate at Lucent and we have already resolved that training for Mentor Graphics was not

---

[7] Although Kocovsky names the individuals in his EEOC charge, we chose not state there name in order to respect their privacy.

given to every employee at Lucent. Kocovsky next maintains that he is similarly situated to a forty-nine year old male because (according to Kocovsky) the male was not accused of making too many errors or placed on probation. Kocovsky does not produce the male's title at Lucent, the period of time he worked there, or the name of the male's supervisor. Finally, Kocovsky states that a male in his late thirties who threatened his supervisor with a gun, was placed on medical leave, and given a salary increase is also similarly situated to him. Kocovsky fails to show that any of these individuals had the same supervisor as Kocovsky, or that they were subject to the same standards as Kocovsky, or that they had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or Lucent's treatment of them. *See Peele*, 288 F.3rd 319 at 320. Kocovsky has failed to prove that any of the individuals named in the EEOC charge were similarly situated to him.

Kocovsky also argues that he was the only employee over forty or under forty in John Sebseson's[8] department where pre-quality testing was used to evaluate his performance and ultimately to terminate him. Pl.'s Mem. in Opp'n to Summ. J. Kocovsky supports this contention by stating that at or slightly before his termination, Shaw hired between ten and fifteen contract workers to become permanent Lucent employees. Pl.'s Amend Compl. ¶ 24; Pl's Statement of Material Facts ¶'s 19, 20; Pl. App. Ex. I. Kocovsky contends that twelve out of fifteen of

these named contract employees were under forty at the time they were hired and Kocovsky was fired. *Id.*

Kocovsky has provided the court with a document which contains the names and birth dates of fifteen individuals. Pl. App. Ex. I. Attached to this document are twelve letters from AT&T addressed to twelve of these individuals. The letters seem to inform the individuals that they have been transferred to AT&T Network Systems. *Id.* The Plaintiff has submitted to the court a list of documents with employee names, birth dates, and letters of transfer to a unit with some of the same supervisors as the plaintiff. Based on these documents alone, we cannot automatically find that the identified employees are similarly situated to Kocovsky. The Court has to consider other factors such as whether or not the identified employees were ever subject to the same standards as Kocovsky, and whether they had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or Lucent's treatment of them. Kocovsky failed to provide the court with this information. Kocovsky failed to identify a similarly situated individual directly comparable to him in all material respects. *See Peele*, 288 F.3rd 319 at 320(quoting *Patterson v. Avery Dimension Corp.,* 281 F.3d 676, 680 (7th Cir. 2002). After a review of all the relevant factors and documents in the record, the court cannot find that Kocovsky was treated less favorably than any similarly situated male or younger employees at Lucent. *See Peele*, 288 F.3rd 319 at 331*(quoting Patterson,* 281 F.3d at 680(holding that "we cannot compare [an

employer's] treatment of [a plaintiff with that co-worker] ... [if the plaintiff] fail[s] to meet her burden of establishing that [the co-worker] is a similarly situated employee.").

In this case, the record clearly demonstrates that Kocovsky's job performance was unsatisfactory, he was not meeting Lucent's legitimate employment expectations, and that he failed to prove that he was treated less favorably than similarly situated male or younger employees at Lucent. As such, this court finds that Kocovsky has failed to establish the *prima facie* case required under the *McDonnell Douglas* burden shifting analysis. Since Kocovsky has failed to establish the first prong of the *McDonnell Douglas* burden shifting analysis, the court need not address the remaining prongs. This court finds that there is no genuine issue as to any material fact relating to Kocovsky's employment discrimination claim.

Therefore, we grant the motion for summary judgment on the ADEA employment discrimination claim.

## II. Retaliation

Kocovsky next asserts that Lucent retaliated against him because he lodged his age discrimination complaints with the EEOC. To defeat a motion for summary judgment a plaintiff bringing an ADEA retaliation claim must first establish a *prima facie* case. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 772 (7th Cir. 2002). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to present a

legitimate non-discriminatory reason for the adverse employment action. *Horwitz v. Board of Educ. of Avoca School Dist. No. 37*, 260 F.3d 602, 614 (7th Cir. 2001). If the defendant produces such a reason, the burden shifts back to the plaintiff to show that the proffered reason was merely a pretext. *Id.*

In *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) the Seventh Circuit has identified the elements for a retaliation claim brought under Title VII of the Civil Rights Act of 1964 ("Title VII"). 42 U.S.C. § 2000e *et seq*. Although the courts treat ADEA and Title VII claims in a similar fashion, *see e.g. Hayden v. LA-Z-Boy Chair Co.*, 838 F.Supp. 384, 389 (N.D. Ill. 1992), the Seventh Circuit has declined to alter the *prima facie* elements for a retaliation claim in several ADEA cases decided since *Stone. Franzoni*, 300 F.3d at 772; *Horwitz*, 260 F.3d at 614. Thus, in order to state a *prima facie* case for an ADEA retaliation claim a plaintiff must establish that : 1) he engaged in protected activity, 2) he suffered an adverse employment action, and 3) there is a causal nexus between the protected activity and the adverse employment action. *Franzoni*, 300 F.3d at 772.

In this case Kocovsky complained about age discrimination on several occasions. Prior to being terminated, he filed five separate ADEA complaints with the EEOC. Thus, he engaged in protected activity. We note that Kocovsky asserts that his retaliation claim is partially based on alleged retaliation for his assistance of a co-worker in an unrelated sexual harassment matter. Kocovsky has not provided sufficient evidence that there was retaliation. However, even if there was retaliation

on Lucent's part associated with the sexual harassment case, it would be retaliation in violation of Title VII rather than in violation of the ADEA. Such conduct by Lucent cannot support an ADEA retaliation claim. Lucent would be retaliating because of Kocovsky's assistance, rather than because of his age. Of course, Kocovsky can argue that any adverse actions were taken against him because of his assistance and his age. However, the mere allegation that Lucent retaliated against Kocovsky because of his assistance to his co-worker is insufficient to support an ADEA retaliation claim. We note that Kocovsky clearly indicates that he is solely bringing an ADEA claim and that there is no indication that he received a right to sue letter for a Title VII retaliation claim.

Kocovsky's employment was terminated and thus he suffered an adverse employment action. This court cannot find that Kocovsky's termination had any relation to Kocovsky's filing of the five EEOC complaints. Even if Kocovsky was able to establish a causal nexus between his complaints and the adverse employment action, this court finds that Lucent provides a legitimate reason for his discharge. Lucent claims that Kocovsky was fired because he did not meet the requirements of his 1996 PIP. Kocovsky merely states in his answer in a conclusory fashion that "[t]he evidence clearly shows that Kocovsky's alleged performance deficiencies were pretextual." However, Kocovsky fails to point to specific evidence that shows that Lucent's reason is a pretext for unlawful discrimination. Kocovsky states in the next sentence in his answer that "[b]oth Shaw and Sebeson demonstrated

indifference and animus towards Kocovsky." However, even if this unsupported

allegation were true, personal animus or indifference are insufficient to support an

ADEA claim. Kocovsky bears the burden of showing that Lucent's reason was a

pretext for unlawful retaliation against Kocovsky in violation of the ADEA.

Kocovsky clearly has not met this burden and therefore, we grant the motion for

summary judgment on the ADEA retaliation claim.

Thus, this court finds that there is no genuine issue as to any material fact as

to Count I of Kocovsky's Amended Complaint, and as a matter of law grants

Lucent's motion for summary judgment as to Count I.

## III.   Employment Retirement Income Security Act ("ERISA")

Kocovsky alleges violations of the Employment Retirement Income Security

Act ("ERISA"). 29 U.S.C. §§ 200, *et. seq.* Lucent argues that Kocovsky has failed

to exhaust his administrative remedies and as a result cannot proceed on his ERISA

claims in Federal Court.

Kocovsky was a participant under the AT&T Management Pension Plan

("AT&T Plan"). Kocovsky was in an organization in AT&T that became part of

Lucent and he was a Lucent employee until the termination of his employment on

May 8, 1996. Effective October 1, 1996 assets from the AT&T Plan were

transferred to the Lucent Management Pension Plan ("Lucent Plan"). Kocovsky

then ceased being a participant under the AT&T Plan and became a participant

under the Lucent Plan. The Lucent Plan contained provisions that were identical

substantively to the provisions in the AT&T Plan.

In *Zhou v. Guardian Life Ins. Co. of Am.* 295 F.3d 677, 679 (7th Cir. 2002), the Seventh Circuit explained that:

> .....As a pre-requisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies. *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 873 (7th Cir.1997). This requirement furthers the "goals of minimizing the number of frivolous lawsuits" and enables the preparation of a more complete factual record for judicial review. *Gallegos v. Mt. Sinai Medical Center*, 210 F.3d 803, 807-08 (7th Cir.2000).

The issue is whether Kocovsky exhausted all of his administrative remedies under the Lucent Plan with the Pension Plan Administrator ("PPA"). Kocovsky contends that it is clear the Plan Administrator plans to take no affirmative action on behalf of Kocovsky. Pl.'s Respons. to Def.'s Mot. for Summ. J. as to Count II. Yet, Kocovsky admits that he testified that he never completed any of the forms sent to him nor submitted any such forms as required by the PPA and the Committee. Pl.'s Local Rule 56.1(a)(3) Statement of Facts ¶ 20 as to Count II.

The discovery exchanged and the evidence produced as a result, make it clear that Kocovsky has taken many different routes by which to resolve his pension status. However, he has failed to provide this court with a single document that would explain to us how he has properly exhausted *all* of his administrative remedies under the Lucent Plan and *according to* the Lucent Plan.(*emphasis added*). Accordingly, Kocovsky cannot prove that further administrate appeal to the Lucent PPA in this case would be futile. *See Zhou*, 295 F.3d at 679. (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir.1996)(stating *"for a party to come*

22

within the futility exception, he "must show that it is certain that [his] claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision").

This court finds that based upon all of the evidence presented, Kocovsky has not exhausted all of his administrative remedies under the Lucent Plan. *See Gallegos*, 210 F.3d 803 at 808(stating that "*it has long been recognized in this Circuit that the intent of Congress is best effectuated by granting district courts discretion to require administrative exhaustion*"); *see also Powell v. AT&T Comm., Inc.*, 938 F.2d 823, 825 (7th Cir.1991); *Kross v. Western Elec. Co., Inc.*, 701 F.2d 1238, 1244 (7th Cir.1983).

Thus, this court finds that there is no genuine issue as to any material factthat Kocovsky has not exhausted all of administrative remedies under the Lucent Plan

Therefore, we grant the motion for summary judgment on the ERISA claim in Count II.

## CONCLUSION

Therefore, based on the foregoing analysis, summary judgment will be granted to Lucent on both Count I and Count II of Kocovsky's Amended Complaint.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 1, 2003

23